IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

LALLA LATIFA BENTE KARROUM,                    )
c/o Allred, Bacon, Halfhill & Young, P.C.       )
11350 Random Hills Road                         )
Suite 700                                       )
Fairfax, Virginia 22030                         )
                                                )
&                                               )
                                                )
Enterprise One Conglomerate Inc.                )
c/o Allred, Bacon, Halfhill & Young, P.C.       )
11350 Random Hills Road                         )
Suite 700                                       )
Fairfax, Virginia 22030                         )
                                                )
    *Plaintiffs,*          )
                                                )
                                                )
v.                                              )
                                                )
ABU DHABI NATIONAL OIL                          )
COMPANY, AKA ADNOC                              )
P.O. Box 4188                                   )
Corniche Road West & 18th Street                )
Abu Dhabi,                                      )
United Arab Emirates                            )
                                                )
&                                               )
                                                )
WESTERN DESERT OILFIELD                         )
SERVICES, LLC,                                  )
Floor M-04                                      )
Al Rumathy Building                             )
P.O.Box 15578                                   )
Abu Dhabi, United Arab Emirates                 )
                                                )
&                                               )
                                                )
                                                )
                                                )
                                                )
                                                )
                                                )

1

SPECIAL EQUIPMENT SUPPLIES, LLC      )
AKA SES                              )
P.O. Box 31192                       )
BLDG NO 253/2                        )
Karama Street                        )
Abu Dhabi                            )
United Arab Emirates                 )
                                     )
&                                    )
                                     )
JAMEEL SOORAJ                        )
aka Joseph Desilva                   )
P.O. Box 31192                       )
BLDG NO 253/2                        )
Karama Street                        )
Abu Dhabi, 31192                     )
United Arab Emirates                 )
                                     )
&                                    )
                                     )
MOHAMED AHMED SAIF ABDULLA           )
AL MAFLAHI                           )
aka George Haddad                    )
P.O. Box 898                         )
Corniche Road West & 18th Street     )
Abu Dhabi                            )
United Arab Emirates                 )
                                     )
&                                    )
                                     )
MONZER AKBIK                         )
Floor M-04                           )
P.O.Box 15578                        )
Al Rumathy Building                  )
Abu Dhabi, United Arab Emirates      )
                                     )
&                                    )
                                     )
AL AMER AL AMERI                     )
Sheikh Rashid Bin Saeed Al Maktoum Street )
(Old Airport Road)                   )
Zayed Sports City                    )
Abu Dhabi, United Arab Emirates      )
                                     )
&                                    )
                                     )

|   | ) |
|---|---|
|   | ) |

YASSIN AL FASI )
aka Jacoub Asfor )
Floor M-04 )
P.O.Box 15578 )
Al Rumathy Building )
Abu Dhabi, United Arab Emirates )
)
& )
)
GOVERNMENTAL OFFICIAL AL KHOURY )
Al Saada St. W )
Abu Dhabi, United Arab Emirates )
)
& )
)
BAKHEET AL AMERI )
P.O. Box 898 )
Corniche Road West & 18th Street )
Abu Dhabi )
)
& )
)
MOHAMED KHAMIS SALEH ALI AL )
JUNAIBI )
P.O. Box 31192 )
BLDG NO 253/2 )
Karama Street )
Abu Dhabi )
United Arab Emirates )
)
& )
)
NANCY SUNITA MACWAN )
Postal Address )
Mrs. Nancy Macwan )
P.O.Box 6761 )
Abu Dhabi )
United Arab Emirates )
)
Residence Address UAE: )
Villa No. 11 )
Adjacent Abu Dhabi Indian School )
18th Street )
Abu Dhabi )

&                                              )
                                               )
SOPHIA KORAYIM                                 )
                                               )
                   *Defendants.*               )
                                               )

## COMPLAINT AND JURY DEMAND

PLAINTIFFS Lalla Latifa Bente Karroum and Enterprise One Conglomerate Inc. by counsel Warner F. Young, Esq. and Allred, Bacon, Halfhill, & Young, P.C. files their Complaint and demands a trial by jury against the abovenamed Defendants, and in support, state:

### PARTIES

1. Plaintiff Lalla Latifa Bente Karroum ("Karroum") is an individual and a citizen of Germany and a current resident of Malta.

2. Plaintiff Enterprise One Conglomerate Inc. ("EOC") and its affiliated subsidiary Abu Dhabi Maintech Oil Company ("ADMOC") are corporations owned by Karroum.

3. Defendant Abu Dhabi National Oil Company Distribution ("ADNOC") is a Corporation with its principal place of business located in the city of Abu Dhabi, in the United Arab Emirates ("UAE").

4. Defendant Western Desert Oilfield Services, LLC ("Western Desert") is a Corporation with its principal place of business located in the city of Abu Dhabi, in the UAE. Western Desert has a local financial sponsor in the UAE, who is related to and has familial ties to Bakheet and Prosecutor Al Ameri.

5. Defendant Special Equipment Services, LLC ("SES") is a Corporation with its principal place of business located in the city of Abu Dhabi, in the UAE. SES provides financial support to Al Maflahi in the form of Ten Thousand (10,000.00) AED per month. Al Maflahi was also representing SES and participated in SES business meetings.

4

6.   Defendant Jameel Sooraj aka Joseph Desilva ("Sooraj") is an individual who resides in the UAE and is the Managing Director of SES. Sooraj is close friends with Al Maflahi.

7.   Mohamed Khamis Saleh Ali Al Juanibi ("Junaibi") is an individual who resides in the UAE. He is the local financial sponsor of SES. Junaibi directed and orchestrated the court case against Karroum discussed *supra*. He presented himself as an undersecretary of the ADJD. He is also an officer of the Secret Service of the UAE.

8.   Defendant Mohamed Ahmed Saif Abdulla Al Maflahi aka George Haddad ("Al Maflahi") is an individual who resides in the UAE and is a Vice President of ADNOC. Al Maflahi, also has a financial interest in Western Desert. Upon information and belief, SES provided financial support to Al Maflahi in the form of 10,000.00 AED per month. Al Maflahi was present in all SES contract and business meetings.

9.   Nancy Sunita Macwan ("Macwan") is an individual who resides in the United Arab Emirates. She holds an ADNOC visa, and has ties to both Western Desert and SES; Macwan carries business cards showing her affiliation with SES, copies are attached as Exhibit A.  Upon information and statements from Macwan she and her family have close ties to the UAE royal family and strong political influence in the country. Macwan and her family have especially strong ties with Sheikh Nahyan bin Mubarak Al Nahyan (and her godfather is Bavaguthu Raghuram Shetty (founder NMC hospital, Neopharma, BRS Ventures,  Finablr and UAE Exchange), Macwan also worked as Karroum's assistant until the year 2018.  She used that position to further the interests of the other defendants for whom she was an agent/owner/employee.

10.  Defendant Monzer Akbik ("Akbik") is an individual who resides in the United Arab Emirates and is the Chief Executive Officer and Owner of Western Desert. Akbik is sponsored by Bakheet.

11.   Defendant Al Amer Al Ameri ("Al Ameri") is an individual who resides in the UAE and works as a Prosecutor with the Abu Dhabi Judicial Department.

12.   Defendant Yassin Al Fasi aka Jacoub Asfor ("Al Fasi") is an individual who resides in the UAE and is the Business Development Manager of Western Desert.

13.   Defendant Government Official Al Khoury ("Al Khoury") is a government official of the UAE and an individual who resides in the UAE. Al Khoury has close ties and affiliations with Al Fasi of Western Desert.

14.   Defendant Bakheet Al Ameri ("Bakheet") is an individual who resides in the United Arab Emirates and is a Director of ADNOC. Macwan, referenced above, also worked as Bakheet's assistant; he was her boss. Bahkeet had a close relationship with Al Maflahi and gave business directions and instructions to Western Desert. Al Maflahi worked under Bakheet for many years in ADNOC, through 2017.

15.   Sophia Korayim ("Korayim") is an individual who resides in the UAE and held official positions and worked on special projects with ADNOC. She was the mistress of Al Maflahi.

## JURISDICTION AND VENUE

16.   Jurisdiction and venue are proper in this Court under Section 28 United States Code Annotated Section 1605(a)(2) and pursuant to the Torture Victim Protection Act, Public Law 102-256, H.R. 2092, 106 Stat. 73, enacted March 12, 1992.

17. The following Defendants submitted themselves to the jurisdiction of the United States when they signed Non-Disclosure Agreements ("NDA") with Karroum: ADNOC, Al Maflahi, Sooraj, SES, Macwan, Korayim, and Al Fasi. A copy of each NDA is attached as Exhibit B.

18.  ADNOC is a publicly traded company and conducts business within the United States and can be called to appear in United States Federal Court system.

## FACTUAL ALLEGATIONS

### *The Technology and Tender*

19.  Karroum is the founder and owner of Enterprise One Conglomerate Inc.("EOC"), a corporation based in Ras Al Khaimah, UAE, with Offices in Frankfurt, Germany. The primary business of Maintech OU, an affiliate of EOC, is to address the cleaning and inspection needs of fuel storage reservoirs. The company was developed and operated by a team of oil industry professionals and engineers.

20.  Through the date of this filing, there has been no regulation or security regarding the maintenance of oil, gas, and petrol stations throughout the region of the Middle East. For more than thirty (30) years gasoline tanks have not been cleaned or inspected, creating a severe risk of polluted and contaminated fuels which could impact consumer vehicles and the environment. Any leakage or contamination could impact and poison the soil and potentially result in lethal fires and explosions.

21.  Maintech OU created a specific technology to address the problems and risks outlined in Paragraph 20 ("the Technology"). The Technology introduced an automated no-man-entry full-robotic cleaning system into the market to clean and inspect oil tanks throughout the Middle East Region including Abu Dhabi, in the UAE. Maintech OU was prequalified through the ARIBA system, and was the only company qualified to use the Technology in the UAE.

22.  In August 2017, ADNOC, a government owned company, created and submitted a Request for Tender titled "Integrity Testing, Cleaning, Inspection of Underground Fuel Storage Tanks/Pipelines at ADNOC and X/EMARAT Service Stations" allowing companies to submit

proposals or "Tenders" to ADNOC for review.  A copy of the Request for Tender is attached as Exhibit C. Any bidder under the Request for Tender, was required to submit a Technical Bid and a Commercial Bid. See Exhibit C.

23.  Maintech submitted its Tender to ADNOC for review. Another company competing with Maintech for the Tender was Western Desert. Western Desert is a privately owned company doing business in the UAE. Although it is a private company, many ADNOC representatives have affiliations with and financial interests in both companies. Specific individuals with ties to both companies and named in this Complaint are: Al Maflahi, Macwan, Korayim and Bakheet.

24.  On January 16, 2018, ADNOC awarded the Tender to Maintech, Tender Number MD 17037, by letter ("January 2018 Letter"). A copy of the January 2018 Letter is attached as Exhibit D. The January 2018 Letter indicated that ADNOC was satisfied with Maintech's "technological performance concerning [its] automated Tank cleaning technology." See Exhibit D.

25.  In order to do business and complete the Tender and the project in the United Arab Emirates, Maintech created a subsidiary branch, Maintech OU dba Abu Dhabi Maintech Oil Company ("ADMOC").  ADMOC would carry out any business ventures associated with the Technology in the UAE. ADMOC was also properly registered to conduct business in the UAE. A copy of the licenses and registration documents are attached as Exhibit E, *see also* Property Rental Agreement, attached as Exhibit F.

26.  In order to use and establish the Technology in the UAE, ADMOC was required by ADNOC policy to use a UAE-local corporation to purchase and provide any equipment that would be needed to carry out the Technology (ICV=In Country Value), *see also* ICV Enhanced Program,

attached as part of Exhibit G. As a result, in April 2018, Karroum purchased shares of SES from

Sooraj for the sum of One Million Two Hundred Thousand Euros

(€ $1,2000,000.00). A copy of the Purchase Contract and Letter of Intent is attached as Exhibit G.

At the time, SES was managed by Sooraj, a businessman, and sponsored by a prominent politician

and government official of the UAE, Junaibi.

27.  Karroum purchased SES because she was required to use a local company

that would provide equipment for additional use of the Technology. This was a requirement under

ADNOC policies. With the establishment of ADMOC and the procurement of SES, Karroum and

EOC were prepared to begin work on the Tender and the tank cleaning project with ADNOC.

28.  Along with establishing the above referenced business relationships with SES and

ADNOC, each of the following signed NDAs with Karroum: ADNOC, Macwan, SES, Al Maflahi;

Sooraj; and Al Fasi. The NDAs were put in place to protect Karroum and her proprietary business

and contractual information. *See* Exhibit B.

***The Threats Begin***

29.  Prior to Karroum's procurement of SES, in August 2017, Karroum received a

telephone call from Akbik of Western Desert, her competitor. In this phone call he threatened her

to stop all of her business activities and ventures in the UAE. Karroum offered to begin a

partnership with Akbik and Western Desert and to create a joint venture. Akbik declined saying

he did not need or want a partner.

30.  Several months later, in November 2018, Bakheet, a representative of ADNOC with

financial ties to Western Desert, made a telephone call to Karroum threatening her to leave the

UAE and to cease all of her business endeavors in the UAE. He told her she would "not be safe

here" if she chose to stay and move forward with the Tender. He told her that she "would not leave the country alive".

***The Illegal and Wrongful Detention***

31.  In May 2018, Karroum was in Abu Dhabi to complete the share transfer and procurement of SES. While in the UAE, Karroum, along with her team, were planning to attend several meetings with the Abu Dhabi Police and the Military in order to conduct trainings associated with different technologies. These meetings were cancelled without prior notice from the Abu Dhabi Police or the Military personnel.

32.  On May 16, 2018, Karroum was in route to a meeting in Dubai with the lawyer and son of H.E. Sultan Bin Rashid Al Kaitoob regarding an urgent business need.  Karroum received a telephone call from the Abu Dhabi Al-Madinah Police Station ordering her to turn herself over to police custody immediately, otherwise, she was told, the Criminal Investigation Department would catch her. Karroum requested further information. She was told "it's okay, just come here, we cannot tell you now."

33.  Karroum complied and went to the Abu Dhabi Al-Madinah Police Station where she was wrongfully and illegally detained for several hours. She was not told why she was being detained and she was never advised that she had the right to have a lawyer present. While her lawyers were outside the Al-Madinah police station, trying to get in to advise Karroum, they were denied access as well as the chance to show any documents they possessed proving her wrongful detention. She later learned that she was detained under false pretenses that she engaged in the slander of her business partners and that she engaged in fraudulent business activities in the UAE.

34.  The police officers seized Karroum's passport and her cellular phone at the beginning of the interrogation. Karroum had a second cellular phone hidden in her garments. She was able to record the conversation and the threats made against her during the following interrogation with the Abu Dhabi police.

35. The police officers were only speaking in Arabic. Karroum requested an Arabic translator but was denied that request. The police officers did not allow her to ask any questions. The police officers took off their badges so that Karroum could not see their names. They did not tell her their names. They wanted to keep her in the dark.

36.  Karroum was interrogated for hours by several male police officers. This is a violation of UAE law; in the UAE, it is illegal for a female to be interrogated by male police officers. During the interrogation, Karroum was threatened at gun point to sign a document written in Arabic, a language that she could not read fluently and could not fully understand. Al Khoury held a gun to Karroum's neck, put chains on her legs so that she could not escape, blew compressed air in her ears, forcibly put hands on her, and forced her to sign the document of which she later learned contained a confession to the charges for which she was illegally detained.

37.  Another unidentified police officer, wearing a brown uniform, forged the signature of the Abu Dhabi Police Captain on the confession that Karroum was forced to sign, attempting to make the confession appear valid and official.

38.  Al Khoury degraded and dehumanized Karroum and called her names. He called her "sharmouta" which means prostitute in Arabic and called her "dirty".  He also called her a "child of a whore" and a "dirty dog". He accused her of carrying a "Bastard" and a "dirty dog". He called her mother a "sharmouta" and her father a "Gawad", which means "pimp"/ "procurer."

39.  Al Khoury is from a prominent and political family in the UAE. Upon information and belief, he, as well as his family, have close ties to the UAE Royal Family and a strong political influence in the country. Upon information and belief, the Al Khoury family is also involved in ADNOC, and were involved in the pre-qualification of the ADNOC's Tender.

40.  At some point during the interrogation, Karroum needed to take medication for her high blood pressure. She was not allowed to do so, instead the police accused her of being a drug addict and a junkie. The police subsequently took her belongings away from her.  They emptied her purse on the floor, dumping out her personal effects and belongings. The police rifled through them and stole them from her. They took her Cartier lighters, and another golden Dupont lighter, her blood pressure medication, and her Montblanc pen sets.  When she, again, refused to sign the confession, Al Khoury threatened to immediately imprison her.

41.  At the time of the interrogation, Karroum was pregnant. As a result of the trauma and violence levied against her, she became so agitated and scared that her water broke. There was no doctor present, and the police refused to take Karroum to the hospital.  She was forced to remain in the police station sitting in her own blood and bodily fluids. Karroum lost consciousness and suffered an excruciating miscarriage surrounded by police. She lost her unborn child in the presence of the police, with no doctor by her side and no one to care for her.  Karroum suffered severe emotional trauma as a result of the violence that occurred during the illegal detention.

42.  Out of fear for her life, Karroum signed the document purporting to admit to crimes which she had not actually committed. Eventually, after signing the document, Karroum was released. The police kept her passport so she could not leave the UAE. None of the documents she signed purported to release the Tender or nullify any contract she had with ADNOC or SES.

43.  Karroum was questioned a second time, this time by prosecutor Al Ameri.  This time, the true intent of the arrest and interrogation of Karroum was revealed.  This time she was asked repeatedly "where is the money;" she was asked about gold and diamonds, including specific items from India and Thailand.  She was asked about her business ownership and the ability to do business in the UAE and was told that ADNOC's business belonged to others with local interest including all defendants named in this Complaint.  She was asked about numerous companies owned or affiliated with the defendants and for information relating to their business transactions.

*The Malicious Prosecution*

44.  In October 2018, six (6) months after the detention, a criminal complaint was brought against Karroum. A copy is attached as Exhibit H (the "Criminal Complaint"). For months prior to the filing of the Criminal Complaint, Karroum was without her passport and she could not leave the UAE.  The Criminal Complaint charged Karroum with fraud and deception.  She denied every charge. She was innocent of each allegation made against her. She was then ordered to appear in court on November 26, 2018. Al Ameri was the prosecutor assigned to her case. Al Ameri had close ties and a relationship with Bakheet of ADNOC / related to Western Desert, who also had close ties to the Abu Dhabi police and was using his office to further his financial interest and those of the other named defendants.

45.  She was denied bail for months. On countless occasions, Karroum and her attorneys requested a bail bond from the court and from Al Ameri, to allow her to leave the UAE. Karroum had a sick mother to attend to and a young son with serious medical needs, suffering from brain cancer. She was denied bail each time. Her son was in need of brain surgery, and Karroum needed to return home. She was not allowed to leave. While she was detained in the UAE, her mother

passed away. She was distraught and suffered severe emotional anxiety and depression at the loss of her family and her inability to be with them or care for them.

46.  Finally, she was granted bail and the ability to return home. It was already too late. Her mother passed away while she was detained.

47.  When the charges were brought and a hearing held on the charges, every charge against her was dismissed. She was found innocent of every allegation brought against her by Al Ameri.

### Business Losses

48.  From the date of her initial interrogation in May 2018, through November 2018, she was detained in the UAE for wrongful and fraudulent allegations against her that were brought because of her business relationship with ADNOC and her competitor Western Desert.

49.  During the time period that Karroum was detained in the UAE, all of her business ventures were put on hold. She was unable to complete contracts for her businesses, for EOC, Maintech OU, ADMOC, SES, and other companies that she managed.  Because of the fraudulent charges against her and her detention, Karroum could not complete the Tender with ADNOC and lost all future business with ADNOC and dependents in the GCC.

50.  ADNOC rescinded the Tender and refused to work with Karroum or any of her companies. Other investors that Karroum had been working with pulled their investments and refused to work with her after the Criminal Complaint was filed against her. As a result of the detention, Karroum could not leave the UAE and could not fulfill her business and contractual duties with regards to her other business ventures. Her businesses were directly and severely affected by the wrongful detention.

51.  While in detention, Karroum received an email from Sooraj that the contract for her to purchase SES was now null and void and the One Million Three Hundred Fifty Dollars ($1,350,000.00) that she paid into the company was forfeited. Sooraj informed her that the contract was now void because she was a criminal. Karroum also discovered that all of the equipment she had purchased to complete the ADNOC Tender which was kept in a warehouse in Abu Dhabi for storage had been stolen.

52.  Karroum received information from the security guard working at the warehouse. He informed her that Sooraj and Plaintiff's assistant, Macwan, had taken the equipment and organized for Plaintiff's equipment to be removed and moved to an undisclosed location. As a result, Karroum lost millions of dollars' worth of equipment that she had paid for. Through the date of this Complaint, Karroum's equipment has never been returned, and she has not been paid for the theft of her equipment.

53.  As a result of losing the ADNOC Tender, Karroum and EOC suffered a loss of $2.5 million.  Karroum and EOC also lost out on other contracts they had made with ADNOC, including a loss of $634,000 in connection with a project for water recycling machines, and a loss of $12,000 in connection with a virtual reality training course.  SES' nullification of her purchase of the company resulted in a loss of $1,350,000 that was spent in the acquisition, as well as the $6,700,000 that her interest in SES was worth.

54.  Karroum and EOC had contracted to perform other tank cleaning jobs subject to successful completion of the ADNOC Tender.   One of these jobs was for the Kingdom of Saudi Arabia. Karroum and EOC lost 3,500,000.00 from that job as a result of losing the ADNOC Tender.  EOC and Karroum lost another tank cleaning job in Kuwait as a result of the wrongful detention,

resulting in lost costs of $138,000, and lost profits of $9,040,000.  EOC and Karroum also lost a tank cleaning job in Syria, resulting in lost costs of $3,835,000, and lost profits of $47,600,000.

55.  Karroum and EOC had a contract for machine hiring for SES that fell through as a result of the loss of the purchase of SES.  EOC and Karroum lost the $150,050 that had been invested in that contract, as well as the $112,000 that would have come from that contract.

56.  Karroum and EOC also lost out on other contracts due to her unavailability while being wrongfully detained.  They had a contract with Iraq that was stolen, resulting in a total loss of $82,170,000.  Construction projects in Germany required Karroum to personally sign for licenses which she was unable to do due to her detention.  Those construction contracts resulted in losses of $5,290,000.

***Karroum's Personal Losses***

57.  As a result of the wrongful detention, and the trauma of being held at gunpoint and threatened, Karroum has suffered severe Post Traumatic Stress Disorder and Depression. She has been diagnosed with Panic Disorder and Anxiety Disorder.

58.  Karroum has undergone extensive psychological treatment to deal with the emotional trauma of the incident and the loss of her mother and unborn child, while she was detained. Karroum's life and mental condition will never be the same again.

59.  Karroum incurred expenses in excess of $580,000.00 as a result of her detention, including legal fees and other expenses from being forced to stay in the UAE.

### COUNT I
### BREACH OF CONTRACT AGAINST ADNOC

60.  ADMOC and ADNOC entered into a contract when ADNOC awarded ADMOC the Tender to provide services and use of the Technology. A copy of the Award of Tender is attached as Exhibit D.

61.  ADMOC was required under the contract to provide use of the Technology and other services to ADNOC in exchange for payment pursuant to the Tender.

62.  ADNOC breached the Tender and the contract when it refused to work with ADMOC, Karroum or any of her companies. ADNOC breached the Tender and the contract when it rescinded the award of Tender after Karroum was detained by the Abu Dhabi police.

63.  EOC and Karroum suffered severe financial damages as a result of the breach of greater than $100,000,000.00.

WHEREFORE, Plaintiffs demand that this Court enter a Judgment against ADNOC for all damages as a result of ADNOC's  breach of contract  in an amount not less than $100,000,000.00 and for pre-judgment interest, post judgment interest and attorney's fees and costs.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT AGAINST
## ALL DEFENDANTS

64.  ADMOC and Karroum had a valid Tender and contract with ADNOC as well as a business expectancy that the Tender would be completed between the contracting parties. *See* Exhibit D.

65.  ADMOC and Karroum had a valid expectancy that they would provide ADNOC with the Technology in exchange for the payment of the service. *See* Exhibit D.

66.  Western Desert and all other named defendants were  aware of the above referenced relationship between ADMOC, Karroum and ADNOC. Al Fasi, the Business Development Manager of Western Desert, made numerous phone calls to Karroum indicating that he was a competitor of Karroum and ADMOC and that Western Desert was also working to win the Tender from ADNOC. Al Fasi made phone calls and went on numerous occasions to ADOS (Abu Dhabi Oilfield Services) to make defamatory wrongful allegations against Karroum. Al Maflahi

contacted ADOS to tell them the Tender was cancelled because of Karroum being a criminal and fraudulent person, the criminal file to Karroum's case in Abu Dhabi is with ADNOC according to Al Maflahi in his communication to ADOS.

67.  Western Desert and all named defendants intentionally interfered with the business relationship between ADMOC, Karroum and ADNOC. All defendants induced and caused the breach or termination of the business relationship between ADMOC, Karroum and ADNOC when they threatened Karroum and used their political connections and influences to have Karroum detained and prosecuted.  As a result of defendant's fraudulent activities, ADNOC rescinded the Tender from ADMOC and EOC.

68.  ADMOC and Karroum suffered severe financial damages as a result of all defendants' inference with the contract and Tender. ADMOC and Karroum lost investments and profits of as much as $200,000,000.00, as a result of the tortious interference and Western Desert's actions.

WHEREFORE, Plaintiffs requests a Judgment against all defendants for all damages suffered by the Plaintiffs including all financial investment losses as a result of the interference with Plaintiffs' business relationship with ADNOC, and lost future profits  and for  pre-judgment interest, post judgment interest, punitive damages, and attorney's fees and costs.

### COUNT III
### CONSPIRACY TO TORTIOUSLY INTERFERE WITH KARROUM and EOC's LEGITIMATE BUSINESS RELATIONSHIP WITH ADNOC AND OTHER CONTRACTS AND BUSINESS RELATIONSHIPS OF KARROUM AND EOC AGAINST ADNOC, WESTERN DESERT, MAFLAHI, AKBIK, AL AMERI, AL FASI, SOORAJ AND BAKHEET

69.  The following companies and individuals worked and conspired together to willfully and maliciously injure Karroum and ADMOC in their business endeavors in the UAE: ADNOC, Western Desert, Maflahi, Akbik, Al Ameri, Macwan, Junaibi, Korayim, Al Fasi, Sooraj and Bakheet.

18

70.  ADNOC had representatives who also held company shares in Western Desert. ADNOC, Western Desert, and their representatives including specifically Al Maflahi, Akbik, Macwan, Junaibi, Bakheet and Al Fasi, used their political connections with government officials and the police to have Karroum arrested in an effort to destroy Karroum and ADMOC's business relationships in the UAE.

71.  Bakheet, a director of ADNOC, with financial ties to Western Desert, used Junaibi, and a family connection to have Karroum prosecuted. Bahkeet's family relative is Al Ameri, the prosecutor that brought the criminal charges against Karroum.

72.  Sooraj, Director and current owner of SES, is sponsored by his shareholder Junaibi, an affiliate of Interpol in the UAE. He and Junaibi used their political power and influence to make it impossible for Karroum to leave the UAE. By detaining Karroum in the UAE, Karroum was unable to complete other contracts and business obligations that she had.

73.  ADNOC, Sooraj, SES, Al Maflahi, and Al Fasi each signed NDAs with Karroum, promising not to discuss Karroum's business, financial or contractual matters, (*see* Exhibit B) and yet, they acted in concert with one another to steal and damage Karroum's businesses. Under the NDAs, they each promised to maintain the secrecy of Karroum's confidential business and proprietary information. *Id.* In ADNOC, Sooraj, SES, Al Maflahi and Al Fasi's secret affiliations with one another, they broke the NDA agreements and made a concerted effort to destroy Karroum, ADMOC's business relations with ANOC.

74.  Each of the individuals named in Paragraph 70 intentionally and maliciously used their business ties and political connections to have Karroum arrested, interrogated, tortured and prosecuted with the goal of destroying her business ventures in the UAE.

75.  EOC and Karroum suffered severe financial damages as a result of the conspiracy carried out by ADNOC, Western Desert, Maflahi, Akbik, Al Ameri, Al Fasi, Sooraj. Junaibi, Macwan, Korayim, and Bakheet. EOC and Karroum suffered the loss of millions of dollars of investments into the Tender, and future profits, as a result of the conspiracy and illegal activity carried out by the above referenced individuals and companies.

WHEREFORE, Plaintiffs demand that this Court enter a Judgment against ADNOC, Western Desert, Maflahi, Akbik, Al Ameri, Al Fasi, Sooraj, Junaibi, Macwan, Korayim, and Bakheet, jointly and severally, for all damages suffered by the Plaintiffs including all financial investment losses as a result of the conspiracy and interference with Plaintiffs' business relationships and that said Judgment include pre-judgment interest, post judgment interest, and punitive damages of $100,000,000.00, and attorney's fees and costs.

## COUNT IV
## MALICIOUS PROSECUTION AGAINST AL AMERI

76.  The detention and prosecution against Karroum was intentional and malicious. Al Ameri is a close relative of Bakheet who wanted Karroum and her business ventures to fail in the UAE. Bahkeet had financial ties to Western Desert, Karroum and ADMOC's direct competitor. Al Ameri, in an effort to assist his family, pursued fake charges against Karroum.

77.  Al Ameri had no evidence or probable cause of the charges brought against Karroum. All he had was the illegal confession obtained from Karroum when she was held at gunpoint and forced to sign a document written in Arabic, which she could not read, and without a lawyer or interpreter present.

78.  Al Ameri used his position, and pursued the prosecution of Karroum, simply to assist and appease his family.

79.  The outcome of the Criminal Complaint terminated in a manner not unfavorable to Karroum; each charge against her was eventually dismissed.

80.  As a result of the malicious prosecution, the wrongful detention, and the trauma of being held at gunpoint and threatened, Karroum has suffered severe Post Traumatic Stress Disorder and Depression. She lost her unborn child and has been diagnosed with Panic Disorder and Anxiety Disorder.

81.  Karroum has undergone extensive psychological treatment to deal with the emotional trauma of the incident and the loss of her mother and unborn child. Karroum's life and mental condition will never be the same again.

82.  As a result of the Criminal Complaint and the malicious prosecution pursued by Al Ameri, Karroum suffered severe emotional and personal losses, financial damages and the loss of millions of dollars of investments into the Tender, and future profits, when ADNOC, SES, and other investors refused to work with Karroum because of her status as a criminal.

WHEREFORE, Karroum demands that this Court enter a Judgment against Al Ameri for all damages suffered by Karroum including all financial investment losses as a result of the malicious prosecution, lost future profits, expenses incurred related to the malicious prosecution, and damages for her Post Traumatic Stress Disorder, Anxiety Disorder, Panic Disorder, and Depression of no less than $100,000,000.00 and that said Judgment include pre-judgment interest, post judgment interest and punitive damages of $100,000,000.00, and attorney's fees and costs.

## COUNT V
## VIOLATIONS OF TORTURE VICTIM PROTECTION ACT OF 1991 PL 102-256
## AGAINST AL KHOURY

83.  Al Khoury as an agent of the UAE government subjected Karroum to torture and violence as defined by the Torture Victim Protection Act of 1991, PL 102-256.

21

84. Al Khoury is from a prominent and political family in the UAE. Upon information and belief, he, as well as his family, have close ties to the UAE Royal Family and a strong political influence in the country. Upon information and belief, the Al Khoury family is also involved in ADNOC, and were involved in the pre-certification of the ADNOC's Tender.

85. Al Khoury, during Karroum's first interrogation, held a gun to Karroum's neck and forced her to sign a document of which she later learned contained a confession to the crimes for which she was illegally detained. Al Khoury degraded her and called her names.

86. Al Khoury threatened to have Karroum imprisoned if she did not sign the document immediately.

87. Al Khoury's actions are a violation of the Torture Victim Protection Act of 1991, PL 102-256.

88. As a result of the wrongful detention, and the trauma of being held at gunpoint and threatened, Karroum has suffered the excruciating and painful loss of her unborn child, severe Post Traumatic Stress Disorder and Depression. She has been diagnosed with Panic Disorder and Anxiety Disorder.

89. Karroum has undergone extensive psychological treatment to deal with the emotional trauma of the detention and violence against her carried out by Al Khoury. Karroum's life and mental condition will never be the same again.

WHEREFORE, Karroum demands that this Court enter a Judgment against AL Khoury for all damages suffered by Karroum for the loss of her unborn child, her Post Traumatic Stress Disorder, Anxiety Disorder, Panic Disorder, and Depression and that said Judgment include pre-judgment interest, post judgment interest and punitive damages of $100,000,000.00, and attorney's fees and costs.

## COUNT VI

## CONSPIRACY TO TORTURE

90.   All of the named defendants conspired to use whatever means possible to injure Karroum professionally and personally by defaming, threatening her with bodily injury and death and by actual physical, mental and emotional torture.   All defendants took actual steps in furtherance of this conspiracy resulting in the acts set out elsewhere in this Complaint.

WHEREFORE, Karroum demands that this Court enter a Judgment against all defendants for all damages suffered by Karroum and that said Judgment include pre-judgment interest, post judgment interest and punitive damages of $200,000,000.00, and attorney's fees and costs.

Respectfully Submitted,
LALLA LATIFA BENTE KARROUM &
ENTERPRISE   ONE   CONGLOMERATE
INC.
By Counsel

ALLRED, BACON, HALFHILL & YOUNG, PC

BY: _____

Heba K. Carter, Esq., D.C. Bar #1030102
Warner F. Young, III
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
(703) 352-1300
(703) 352-1301 (Fax)
Wyoung@abhylaw.com
Hcarter@abhylaw.com